UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
::
ENRIQUE JARAMILLO,  :  08-CV-2837 (ARR)
:
Plaintiff,  :  NOT FOR PRINT OR
:  ELECTRONIC
-against-  :  PUBLICATION
:
MICHAEL J. ASTRUE,  :  OPINION AND ORDER
Commissioner of Social Security,  :
:
Defendant.  :
:
------------------------------------------------------------------ X

ROSS, United States District Judge:

Plaintiff, Enrique Jaramillo, seeks judicial review of the decision of the Commissioner of

Social Security that he was not disabled under the Social Security Act (the "Act") for purposes of

receiving Disability Insurance Benefits ("DIB"). The Commissioner moves for judgment on the

pleadings and plaintiff declined to respond to the motion. For the reasons explained below, the

court grants defendant's motion for judgment on the pleadings.

## BACKGROUND

Plaintiff filed an application for DIB on January 29, 2004, claiming that he became

disabled on July 15, 2003. (R. 35-37.) He claimed that he was disabled due to "unbearable" pain

felt "all over my bones" and the inability to lift his arms. (R. 57-59.) His doctors described his

disability as osteoarthritis. (R. 125-26, 143.) Plaintiff reported that he had not worked since

September 27, 2003, when he was laid off. (R. 57, 69.) Plaintiff's application was denied on

June 7, 2004. (R. 16-19.) He then requested a hearing before an Administrative Law Judge

("ALJ"), which was held before ALJ Michael H. Noorigian by video conference on February 22,

1

2006. (R. 11, 185-201.)  At the hearing, plaintiff was represented by attorney Richard Morris, who amended plaintiff's alleged disability onset date and requested a closed period of disability from January 4, 2004 until January 31, 2005, followed by a trial work period.[1]  (R. 200.)  On March 3, 2006, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB because he engaged in substantial gainful activity.  (R. 8-14.)  Plaintiff requested review, and the Appeals Council denied plaintiff's request on June 9, 2008.  (R. 4-6.)  The ALJ's decision thus became the final decision of the Commissioner on that date.  Plaintiff commenced the instant action on July 9, 2008.  In this action, plaintiff states that he suffers from arthritis in his shoulders, knees, and arms, which began on October 11, 2003.  (Compl. ¶ 4.)

## A. Evidence Before the ALJ

### 1. Non-Medical Evidence

Plaintiff was born on August 27, 1941.  (R. 35, 44.)  He completed the twelfth grade.  (R. 63.)  Plaintiff has worked both as a driver and as a maintenance worker.  He worked full-time as a driver for Avis Rent A Car from 1988 to 1991.  (R. 69, 74, 91, 93.)  He then worked for five years as a truck driver performing delivery services, followed by five years performing maintenance work and providing cleaning services at office buildings.  (R. 91-94, 193.)  Plaintiff stopped doing maintenance work after he fractured his right shoulder in July 2003, lifting a heavy garbage container at work.  (R. 193-94.)

Plaintiff testified at his 2006 video teleconference hearing before ALJ Noorigian that he currently works as a part-time driver for Dollar Rent A Car, a position he began in July 2004.  (R.

---

[1] One week prior to the hearing, plaintiff's attorney had advised the ALJ by letter that plaintiff had amended his application for benefits to reflect that he was seeking an onset date of disability of January 1, 2004.  (R. 34.)

192-93.) He testified that he typically works 29 to 31 hours per week, and is paid $7.25 per hour, up from his initial starting salary of $6.25 per hour. (R. 192.) Plaintiff's FICA earnings records indicate that he earned $6,820.82 in 2003, $5007.30 in 2004, and $11,293.31 in 2005. (R. 53.)

On March 12, 2004, plaintiff completed a questionnaire about his medical impairments for the New York State Office of Temporary and Disability Assistance. (R. 77-87.) Plaintiff reported that prior to his condition, he was able to work full-time as a maintenance worker, which he is no longer able to do. (R. 78.) He reported that he is unable to lift heavy things, stand for long periods of time, kneel, squat, bend down, or reach over his back. (R. 78, 82.) He reported that he experiences pain in his arms, shoulders, lower back, legs, knees, and ankles. (R. 85.) He reported that he feels the pain all night and is therefore unable to sleep. (R. 85.)

During his testimony before ALJ Noorigian, plaintiff stated that he fractured his right shoulder and, as a result, he lost strength in his arm and experiences pain in his arm. (R. 193, 196.) Plaintiff testified that in his current position as a driver for Dollar Rent A Car, he experiences pain while he is driving and using his hands. (R. 197.) He explained that he is unable to work more than 30 hours per week because of this pain. (R. 197.)

### 2. Medical Evidence

The Social Security Act regulations specify that if a DIB applicant is working and the work performed is substantial gainful activity, the applicant will not be found disabled regardless of his medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(b). Because the ALJ in the instant case found plaintiff to be engaged in substantial gainful activity and therefore never reached the evidence of his disability, the court will only briefly describe the medical evidence presented in this case.

Plaintiff is under the care of four physicians: Dr. Fausto Gonzales, Dr. Sergio Martinez, Dr. Milagros Hernandez, and Dr. Ramon Vallarino. In April 2004, Dr. Gonzales provided the New York State Office of Temporary and Disability Assistance with a report describing that plaintiff suffers from osteoarthritis and has symptoms of body and muscle aches. (R. 118.) At the same time, Dr. Martinez wrote to the Office of Temporary and Disability Assistance that plaintiff has been treated for chronic shoulder and back pain, hypertension, and osteoarthritis, and would need to continue therapy. (R. 125.) In May 2004, Dr. Hernandez provided the Office of Temporary and Disability Assistance with a report describing that plaintiff suffers osteoarthritis of the knees and shoulders and has experienced shoulder and knee pain for six months. (R. 126.)

Plaintiff was examined by Dr. Kyung Seo in March 2004. (R. 114.) Dr. Seo diagnosed plaintiff as having "lower back derangement, probably degenerative spondylosis and degenerative disk disease; arthralgia of the right shoulder" and mild osteophytosis of the lumbosacral spine. (R. 115.) Dr. Seo concluded that "[f]unctionally, due to aching pain of the right shoulder, lower back, and rigid spine, sitting is slightly limited, standing is slightly limited, walking is slightly limited, and bending, lifting, and carrying heavy objects are moderately limited." (R. 115.)

Plaintiff has been prescribed several medications for daily consumption, including Prednisone, Methocarbamol, Diclofenac, and Celebrex. (R. 114, 119, 127.) He was prescribed physical therapy by Dr. Gonzalez and has reported for therapy with Dr. Ramon Vallarino two to three times per week for several weeks. (R. 100, 140-41.) In May 2004, Dr. Vallarino wrote a letter describing that plaintiff suffers from osteoarthritis of the shoulders, lumbar derangement,

4

and bilateral knee capsulitis. (R. 143.) In October 2005, Dr. Vallarino reported that plaintiff has

significant limitations of function of his shoulders. (R. 183.)

## DISCUSSION

A.    Standard of Review

This case comes to the court for review of the Commissioner's decision that the plaintiff

is not disabled.

> Under the Social Security Act, a "disability" is defined as inability to engage in
> any substantial gainful activity by reason of any medically determinable physical
> or mental impairment which can be expected to result in death or which has lasted
> or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1). An individual is considered to be under a "disability" if his impairment is

of such severity that he is unable to perform his previous work and, given his age, education, and

work experience he is not able to engage in any other type of substantial gainful employment in

the national economy. See 42 U.S.C. § 423(d)(2)(A). In determining whether an individual is

disabled, the Commissioner is to consider both objective and subjective factors, including

"objective medical facts, diagnoses or medical opinions based on such facts, subjective evidence

of pain and disability testified to by the claimant or other witnesses, and the claimant's

educational background, age, and work experience." Parker v. Harris, 626 F.2d 225, 231 (2d Cir.

1980)(citations omitted).

In order to establish disability under the Act, a claimant must prove that (1) he is unable

to engage in substantial gainful activity by reason of a physical or mental impairment expected to

result in death or that had lasted or could be expected to last for a continuous period of at least

twelve months; and (2) the existence of such impairment was demonstrated by medically

5

acceptable clinical and laboratory techniques. 42 U.S.C. §§ 423(d), 1382(a); see also Shin v.

Apfel, No. 97 CIV. 8003(RWS), 1998 WL 788780 at *5 (S.D.N.Y. Nov. 12, 1998) (citing cases).

The SSA has promulgated a five step process for evaluating disability claims. See 20

C.F.R. § 404.1520. The Second Circuit has characterized this procedure as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in
> substantial gainful employment. If he is not, the [Commissioner] next considers
> whether the claimant has a 'severe impairment' which significantly limits his
> physical or mental ability to do basic work activities. If the claimant suffers such
> an impairment, the third inquiry is whether, based solely on medical evidence, the
> claimant has an impairment which is listed in Appendix 1 of the regulations. If
> the claimant has such an impairment, the [Commissioner] will consider him
> disabled without considering vocational factors such as age, education, and work
> experience . . . . Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe impairment, he has the
> residual functional capacity to perform his past work. Finally, if the claimant is
> unable to perform his past work, the [Commissioner] then determines whether
> there is other work which the claimant could perform.

Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Berry v. Schweiker, 675 F.2d 464, 467

(2d Cir. 1982) (per curiam)) (brackets and alteration in original). The plaintiff has the burden of

establishing disability on the first four steps of this analysis. On the fifth step, however, the

burden shifts to the Commissioner. See Bluvband v. Heckler, 730 F.2d 886, 891 (2d Cir. 1984).

Once a decision can be made that a claimant is or is not disabled, the Commissioner does

not proceed to the remaining steps. 20 C.F.R. § 404.1520(a)(4); Williams v. Apfel, 204 F.3d 48,

49 (2d Cir. 1999).

The court's role in reviewing the decisions of the Social Security Administration ("SSA")

is narrowly confined to assessing whether the Commissioner applied the correct legal standards

in making his determination and whether that determination is supported by substantial evidence.

See 42 U.S.C. §§ 405(g), 1383(c); Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Donato

v. Secretary, 721 F.2d 414, 418 (2d Cir. 1983). Substantial evidence is defined as "more than a mere scintilla[:]" it is evidence that a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citation omitted).

B.    The ALJ's Decision

In the instant case, the ALJ undertook the prescribed sequential analysis and found after the first step that the plaintiff was not disabled. The ALJ first determined that plaintiff had earnings from wages after his alleged onset of disability in January 2004. (R. 13.) According to plaintiff's FICA earnings statement, plaintiff earned $5007.30 in 2004 and $11,293.31 in 2005. (R. 53.) Plaintiff testified that he began working as a driver for Dollar Rent A Car in July 2004, a position which he continued to hold throughout 2005. (R. 193.)

The Commissioner's regulations provide that an individual with earnings over a certain level will be presumed to have engaged in substantial gainful activity ("SGA"), and is therefore not disabled for purposes of DIB. See 20 C.F.R. § 404.1574(a), (b)(2). For the 2004 calendar year, earnings in excess of $810.00 per month qualified as substantial gainful activity and for the 2005 calendar year, earnings in excess of $830.00 per month qualified as substantial gainful activity. See 20 C.F.R. § 404.1574(b)(2)[2]; SSA Cost-of-Living Increase and Other Determinations for 2005, 69 Fed. Reg. 62,497, 62,502 (Oct. 26, 2004); SSA Cost-of-Living Increase and Other Determinations for 2004, 68 Fed. Reg. 60,437, 60,441 (Oct. 22, 2003).

---

[2] Under the regulation, beginning January 1, 2001, substantial gainful activity earnings are determined based on "an amount adjusted for national wage growth, calculated by multiplying $700 by the ratio of the national average wage index for the year 2 calendar years before the year for which the amount is being calculated to the national average wage index for 1998." 20 C.F.R. § 404.1574(b)(2)(ii)(B).

ALJ Noorigian found that plaintiff had engaged in substantial gainful activity subsequent to the alleged onset of his disability on January 1, 2004. The ALJ based his finding in part on plaintiff's testimony about his employment and his FICA earnings records.[3] ALJ Noorigian reasoned that plaintiff's earnings figures from July 2004 through the end of 2005 demonstrated that plaintiff earned in excess of the level at which substantial gainful activity is presumed in both 2004 and 2005. (R. 13.) The ALJ further found that even if plaintiff's earnings did not constitute substantial gainful activity based upon the earnings guidelines, the regularity and consistency of plaintiff's work – plaintiff testified he works 29 to 31 hours per week – are evidence that the work qualifies as substantial gainful activity. (R. 13.)

The ALJ also found to be without merit plaintiff's argument that he was entitled to a trial work period following the date of January 31, 2005. (R. 13.) The ALJ reasoned that plaintiff's substantial gainful activity began in July 2004 and has continued since that date. (R. 13.) As a result, the ALJ found that a trial work period was not applicable. (R. 13.)

C.    Review of the ALJ's Decision

The ALJ's decision is supported by substantial evidence. As an initial matter, the fact that plaintiff suffers from osteoarthritis does not result in a finding that he is disabled. He must show that his medical impairments caused functional limitations that precluded him from engaging in any substantial gainful activity "for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Rivera v. Harris, 623 F.2d 212, 215-16 (2d Cir. 1980); Massimino v. Shalala, 927 F. Supp. 139, 142 (S.D.N.Y. 1996).

---

[3] During plaintiff's hearing before ALJ Noorigian, plaintiff's counsel, after reviewing plaintiff's FICA earnings statement, in fact conceded that plaintiff engaged in substantial gainful activity in 2005. (R. 200.)

Substantial gainful activity is defined as "work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. "Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). "Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

In determining whether there has been substantial gainful activity, the regulations state that several factors are to be considered. See 20 C.F.R. § 404.1574(a)-(d). These factors include: 1) the earnings derived from the work activity; 2) the amount of the earnings; 3) whether the work is in a sheltered or special environment; 4) any unsuccessful work attempts ( i.e. working for six months or less due to the impairment); and 5) whether the work activity falls under certain volunteer programs. Id. The regulations provide that an individual will be found to have engaged in substantial gainful activity when his earnings from work activities average more than $810 per month in the year 2004 and more than $830 per month in the year 2005. See 20 C.F.R. § 404.1574(b); SSA Cost-of-Living Increase and Other Determinations for 2005, 69 Fed. Reg. 62,497, 62,502 (Oct. 26, 2004); SSA Cost-of-Living Increase and Other Determinations for 2004, 68 Fed. Reg. 60,437, 60,441 (Oct. 22, 2003).

The record contains evidence that plaintiff's earnings beginning in July 2004 and 2005 exceeded these amounts. Plaintiff has not disputed his total earnings or provided any information to show that the reported earnings should not have been counted. Although the ALJ's decision did not articulate the method used to determine plaintiff's average monthly

9

earnings from July 2004 through 2005 before the ALJ concluded that plaintiff's average monthly earnings exceeded the substantial gainful activity wage guidelines, this court finds that the ALJ must have performed proper calculations. Plaintiff's FICA earnings statement specified that he earned $5007.30 in 2004 and plaintiff testified that he began working in July 2004 at Dollar Rent A Car. Therefore, assuming plaintiff worked the entire month of July, plaintiff earned an average of $834.55 per month from July 2004 through December 2004, the months when he was working. An applicant's earnings must be averaged over the time period during which he worked. See Richards v. Barnhart, No. 05-CV-0528, 2009 WL 236688, at *4 (N.D.N.Y. Feb. 2, 2009). Plaintiff's 2004 average monthly earnings figure exceeds the substantial gainful activity earnings guideline of $810.00 per month in 2004. Similarly, plaintiff's FICA earnings statement specified that he earned $11,293.31 in 2005 and plaintiff testified the he worked throughout 2005. Dividing plaintiff's 2005 earnings by the twelve months in which they were earned, plaintiff earned an average of $941.11 per month in 2005. This earnings figure exceeds the substantial gainful activity earnings guideline for 2005 of $830.00 per month.

Furthermore, since, at most, plaintiff did not work from January 1, 2004 through July 2004, plaintiff cannot show that he was disabled for a continuous period of not less than twelve months. The ALJ correctly found that plaintiff engaged in substantial gainful activity. This decision is reasonable and is affirmed by this court under the substantial evidence rule. See 42 U.S.C. § 405(g). Although plaintiff's original application for DIP claimed that he became disabled in July 2003 and that he had been unemployed since he was laid off in September 27, 2003, the ALJ was required to base his decision on the closed period of disability from January 4, 2004 to January 31, 2005 requested by plaintiff's counsel both in a letter and during the video

10

conference hearing. Even if the ALJ had considered plaintiff as being out of work from October 1, 2003 to July 1, 2004, plaintiff still could not show a continuous period of not less than twelve months in which he was unable to perform substantial gainful activity.

Finally, regulations specify that "work [an applicant] ha[s] done will not show that [he is] able to do substantial gainful activity if, after working for a period of 6 months or less, [his] impairment forced [him] to stop working or to reduce the amount of work [he] do[es] so that [his] earnings from such work fall below the substantial gainful activity earnings level." 20 C.F.R. § 404.1574(c)(1). Since plaintiff's alleged onset of disability in January 2004, the record indicates that plaintiff first began working in July 2004 and has held the same job without any reduction in work hours until at least February 2006. Therefore, the record would not support a finding that plaintiff qualifies for this particular exception to other substantial gainful activity regulations.

The ALJ's decision that plaintiff was not entitled to a trial work period beginning in February 2005 must also be affirmed. A trial work period is defined in the regulations as "a period during which [the DIB applicant] may test [his] ability to work and still be considered disabled." 20 C.F.R. § 404.1592(a). The period may last up to nine months, which do not necessarily have to be consecutive. Id. "The trial work period begins with the month in which [the applicant] become[s] entitled to disability insurance benefit . . ." 20 C.F.R. § 404.1592(e). A finding in this case that plaintiff's 2005 work activity was a trial work period could not have been made without a determination that plaintiff became entitled to DIB at some point in 2004. A DIB applicant must be disabled in the first instance to qualify for a trial work period. See 20 C.F.R. 404.1592(d)(1) ("You are generally entitled to a trial work period if you are entitled to

11

disability insurance benefits . . ."); Miller v. Astrue, 538 F. Supp. 2d 641, 653 (S.D.N.Y. 2008). Thus, because the ALJ's determination that plaintiff engaged in substantial gainful activity during the period of his alleged disability is supported by substantial evidence, the determination that plaintiff is not entitled to a trial work period in 2005 is also supported by substantial evidence.

## CONCLUSION

Accordingly, there was substantial evidence supporting the ALJ's determinations that plaintiff was not disabled because he performed substantial gainful activity and that he was not entitled to a trial work period.

The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

/S/

Allyne R. Ross
United States District Judge

Dated: December 7, 2009
      Brooklyn, New York

SERVICE LIST:

<u>Pro Se Plaintiff:</u>
Enrique Jaramillo
37-21 80 Street
Apt. # 3I
Jackson Heights, NY 11372

<u>Social Security Administration</u>
Margaret Ann Donaghy. Esq.
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201